UNITED STATES DISTRICT COURT EASTERN
DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SHAIFUL CHOWDHURY,                                    AMENDED
                                                      COMPLAINT

                                   Plaintiff,         1:21cv-CITY 00962

                                                      Plaintiff demands trial
                                                      by Jury of all issues
—against—                                             triable by Jury

**THE CITY OF NEW YORK,**
**P.O. KERRY PLIWIAK, shield # 18549, 75TH Pct.**
**individually and in his official capacity,**
**P.O. JOHN ZERELLA, Shield # 8731, 75th Pct.,**
**individually and in his official capacity**
**DET. SANTANA (first name unknown), 75th Pct.**
**individually and in his official capacity,**
**DET. TASEVOLI, (first name unknown), 75th Pct.,**
**individually and in his official capacity**
**DET. MASTORARDI, (first name unknown), 75th Pct.**
**individually and in his official capacity**
**SGT. CALHOUN (first name unknown) 75th Pct.**
**individually and in his official capacity**
**SGT. RICHARD ELLIOT, TAX # 941009, 75th Pct.**
**individually and in his official capacity**
**SGT. JAMES MCSHERRY, TAX # 942175, 75th Pct.**
**individually and in his official capacity**
**LT. CAIN, (first name unknown), 75 Pct.**
**individually and in his official capacity**

                                   Defendants

-------------------------------------------------------------------------X

Plaintiff, by his attorney, Rehan Nazrali, Esq., alleges for his complaint against the defendants

upon information and belief:

## INTRODUCTION

1.      This is an action at law to redress the deprivation by Defendants, acting under

color of statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity

secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America with intent to deny Plaintiff his civil rights, all of which arise under Federal Law, particularly Title 42 U.S.C. §§ 1983 and 1988, and the Constitution, Laws and Statutes of the United States and the State of New York.

## JURISDICTION AND VENUE

2.      This action arises under the United States Constitution, particularly under the provisions of the  Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and under Federal law, particularly Title 42 of the United States Code, §§ 1983, 1988. This Court also has jurisdiction of this case under and by virtue of Title 28 of the United States Code, §§ 1331, 1342 (4) and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

4.      At all relevant times, Plaintiff Shaiful Chowdhury has been and is a resident of  the City of New York, County of Kings and State of New York.

5.       Defendant the City of New York (CITY) is a municipal entity created and authorized under the laws of the State of New York. CITY is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

6.      That CITY is among other things, the delegating authority, and as such maintains control and supervises the functions and activities of the NYPD and is responsible for regulating and ensuring said Mayoralty is in compliance and performance under the Laws of the City and State of New York.

7.       Defendant CITY was also at all relevant times herein authorized to act through the Kings County District Attorney's Office ("D.A.") in regard to investigation,  evaluation,

and prosecution of alleged criminal conduct within Kings County.

8.      Defendant KERRY PLIWIAK (PLIWIAK) Shield # 18549, was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is  being sued in his official and individual capacity.

9.      Defendant   JOHN ZERELLA, (ZERELLA) Shield # 8731, was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual  capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is  being sued in his official and individual capacity.

10.      Defendant  DET. SANTANA, (SANTANA) (first name unknown) was at all times relevant to this Complaint a duly appointed detective of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is  being sued in his official and individual capacity.

11.   Defendant  DET. TASEVOLI, (TASEVOLI) (first name unknown), was at all times relevant to this Complaint a duly appointed detective of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual  capacity within the scope of employment

pursuant to the statutes ordinances, regulations, policies,  customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

12.   Defendant  DET. MASTORARDI, (MASTORARDI) (first name unknown)**,** was at all times relevant to this Complaint a duly appointed detective of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

13.   Defendant  SGT. CALHOUN, (CALHOUN) (first name unknown)**,** was at all times relevant to this Complaint a duly appointed Sergeant of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of  the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

14.   Defendant  SGT. RICHARD ELLIOT, (ELLIOT) TAX # 941009**,** was at all times relevant to this Complaint a duly appointed Sergeant of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of  the  City  of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

15.   Defendant  SGT. JAMES MCSHERRY, (MCSHERRY) TAX # 942175**,** was at all times relevant to this Complaint a duly appointed Sergeant of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

16.   Defendant  LT. CAIN, (CAIN) (first name unknown)**,** was at all times relevant to this Complaint a duly appointed Lieutenant of the NYPD, assigned to the 75th Pct., acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies,  customs,  and  usage  of  the  City  of  New  York  and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his official and individual capacity.

17.   Defendants John Doe ## 1 through 5 are named fictitiously, the parties' true names being unknown to Plaintiff, the persons intended being the agents, servants and employees of defendant City who are joined individually and in their official capacities, who were at all times acting within the purpose and scope of their agency and employment and who were, together with all named defendants, substantially responsible for the deprivation of rights hereinafter complained of.

18.   That said individual Defendants were acting under color of state law, under color of the statutes, ordinances, regulations, policies, and customs and usages of the City of New York.

PENDENT STATE CLAIMS

19.   Commencing on March 20, 2020, as a result of the Covid-19 pandemic, then NY Governor Andrew Cuomo issued numerous Executive Orders including E.O. #202.67,

which tolled the Statute Of Limitations for Filing Notices of Claims, and
commencement of civil suits until November 3, 2020.

20.     That on or about November 4, 2020, Plaintiff's Notice of Claim was duly filed
with the Comptroller's office of the City of New York.

21.     That on March 9th, 2023, Plaintiff Amended Notice of Claim was duly filed with
the Comptroller's office of the City of New York.

22.      That said Notices of Claims were timely filed after the causes of action had
accrued and as such more than thirty (30) days have elapsed since the filing of said Notice and
this matter has not been settled or otherwise disposed of.

23.     The Plaintiff has been ready, willing and able to submit to an inquiry concerning
the justness of his claims as provided by section 50-H of the General Municipal Law.

24.     The Plaintiffs have substantially complied with all the conditions precedent to the
commencement of this cause of action.

FACTS

25.     On February 23, 2020 at approximately 3:50 pm thereof, Plaintiff was the owner of
the premises known as 347 Bradford St, Brooklyn, NY 11207, a brick row house with three floors
and three apartments therein.

26.      That on February 23, 2020, at approximately 3:50 pm Plaintiff had called the
police to investigate a robbery against himself at the above residence.

27.     That members of the NYPD assigned to the 75th Precinct, including but not
limited to Defendants PLIWIAK, ZERELLA, SANTANA (first name unknown); TASEVOLI
(first name unknown); MASTORARDI (first name unknown); CALHOUN (first name
unknown), ELLIOT,; MCSHERRY, LT. CAIN, and JOHN DOES#1-5, did respond to and did
arrive at the above residence and did commence an investigation into the aforesaid robbery.

28.     That in the course of said investigation, said members of the service including but

not limited to the above-named officers did without a warrant commence a search of the entire premises.

29.     During the course of this warrantless search, said above named officers did discover a quantity of marijuana in the third floor apartment.

30.      That notwithstanding the fact that Plaintiff had leased said third floor apartment to unrelated tenants with whom he was in a landlord tenant Court proceeding for purposes of evicting same, and pursuant to said lease Plaintiff had no right of re-entry thereto, other than what was allowed by law, said above named members of the service did commence an improper and unlawful line of investigatory inquiry.

31.     That further, during this course of inquiry, said Members of the Service, to wit including but not limited to Detectives SANTANA, TASEVOLI and MASTORARDI did make bigoted and structurally and systemically racially offensive and discriminatory remarks about Plaintiff's personality and possessions they observed, demonstrating  unlawful and unconstitutional bias and animus towards Plaintiff, to wit "***why do people like you live in this place***", "***how did you buy this property***", "***how did you get all this nice stuff***" insinuating that because of Plaintiff's race, he should not be able to afford to own the building and properly furnish it. Plaintiff responded to the inappropriate comments by stating that he has a job and works for a living.

32.     That on February 23, 2020, several plain clothes detectives, to wit, but not limited to detectives DET. SANTANA, DET. TASEVOLI DET. MASTORARDI all white males, large, muscular, with blond and or brown hair, dressed in various forms of casual attire, did surround Plaintiff simultaneously and contemporaneously, while he was sitting, and did attempt to coerce and compel Plaintiff to sign said search warrant for the premises, which Plaintiff refused.

33.     That on February 23, 2020 at approximately 3:50 pm thereof, JOHN DOE #1 (who may include also DET. SANTANA, DET. TASEVOLI DET. MASTORARDI**,** a plain clothes

Member of the NYPD, a middle aged, white male, heavy set, approximately 6'2", dressed in a striped crew-neck t-shirt, dark jeans and sneakers with a salt and pepper beard, believed to be the highest ranking Officer on the scene,  did attempt to induce and coerce Plaintiff into signing said same warrant to search another part of the premises, which Plaintiff again refused to do.

34.     That on February 23, 2020 at approximately 5:03 pm thereof,  upon Plaintiffs refusal to sign said search warrant, said highest ranking member of the service on the scene as described above, did instruct PLIWIAK**,** to arrest Plaintiff by placing him in handcuffs.

35.     That Def. McSHERRY**,** approved Plaintiff's arrest.

36.     That thereupon Plaintiff was transported to the 75th precinct thereof, where he was fingerprinted and placed in a dirty, unhygienic jail/holding cell.

37.     That Plaintiff remained in said jail/holding cell without being informed what the basis of any of the charges against him were, for 55 hours thereof, from the evening of Sunday, February 23, 2020 through on to the morning of Thursday February 27, 2020.

38.     That during the time that Plaintiff remained in said jail/holding cell for 55 hours Defendant Kings County District Attorney's office did engage in police investigate work to find evidence in support of the illegal and unconstitutional warrantless search and  arrest with which to prepare fabricated criminal charges against Plaintiff.

39.      That as a result of the false and malicious actions of the aforementioned defendants including all named members of the NYPD, Plaintiff was arraigned on Thursday, February 27, 2020 and released on his own recognizance.

40.     That on January 11, 2023, after many court appearances, Plaintiff's charges were dismissed by motion of the District Attorney's office in their entirety before trial on January 11, 2023.

41.     No warrant for the arrest of Plaintiff has ever been issued for the arrest made on February 23, 2020.

42.      All of the named defendants intended to confine Plaintiff.

43.      All of the named defendants actually did confine Plaintiff without Plaintiff's consent.

44.      Plaintiff was actually aware of his confinement.

45.      At the time of Plaintiff's arrest there was no probable cause or reasonable ground to suspect that Plaintiff had committed or was about to commit any of the crimes with which he was charged.

46.      Upon Information and belief, Plaintiff was confined incommunicado for more than 48 hours and in violation of New York Criminal Procedure Law 140.20 was subjected to unnecessary delay in being brought before a local criminal court for arraignment.

47.      All of the named defendant who were present during Plaintiff's arrest and were aware that Plaintiff protested that the third floor apartment was leased by Plaintiff to an unrelated third party and that Plaintiff had no dominion or control over the contents of the third floor apartment but did nothing to intervene in the unfounded arrest conducted by defendant PLAWIAK.

48.      By the conduct of all named defendants, defendant CITY through and/or by the actions of its agents, servants and employees, namely the aforesaid members of the NYPD and the Kings County District Attorney's Office under color of law, pursuant to U.S.C §1983, did deprived Plaintiff of his State and Federal constitutional right to be free from false arrest, malicious prosecution, false imprisonment, abuse of process and failure to intervene.

49.      That the NYPD Officers, in the course of their wrongful conduct described in the foregoing paragraphs, were acting in the course of and in furtherance of their employment for defendants City of New York and NYPD and as such, as their employer, defendant CITY is liable for their wrongful and negligent conduct.

50.     Additionally, and upon information and belief, defendants CITY, ,  failed in its duty to train, retain, manage, control and  supervise their agents, servants, employees and personnel in the proper safe and secure manner in which to arrest individuals only when probable cause existed to believe that Plaintiff had committed a crime and then to refrain from fabricating false charges in order to justify wrongful conduct and to intimidate victims and such failure resulted in false charges being used and leveled on Plaintiff which conduct proximately contributed to the Plaintiff losing his employment and to losing his permit by the Financial Industry Regulatory Authority ("FINRA") to pursue any employment in the securities industry.

51.     That as a result of the aforementioned wrongful, negligent, careless, and reckless conduct of the aforesaid Defendants, Plaintiff was caused to lose his employment as a Financial Advisor and broker and to be placed lost his  permit by the Financial Industry Regulatory Authority ("FINRA") to pursue any employment in the securities industry.

52.     The conduct of Defendant CITY has been just one instance of the ongoing misconduct of the CITY and the NYPD in its ongoing campaign of systemic racial discrimination and repression of minorities in New York City, and in particular the minority residents of East New York who are policed by officers of the NYPD 75th Precinct.

53.     The systematic repression and misconduct of the NYPD 75th Precinct is well-known to the City of New York, not only from the records of the Civilian Complaint Review Board, which evidence rates of complaint at more than twice the frequency of any other precinct in the City of New York, but also from the ongoing attention of investigative journalists, to include among other matters, the celebrated documentary *The Seven Five*, directed by Tiller Russel (released 2015).

## FEDERAL CLAIMS

### FIRST CAUSE OF
### ACTION 42 U.S.C. § 1983
### FOURTH AND FOURTEENTH AMENDMENT MALICIOUS PROSECUTION
### AGAINST DEFENDANTS CITY,  PLIWIAK, ZERELLA,
### SANTANA, TASEVOLI, CALHOUN,
### ELLIOT MCHSERRY & CAIN

54.     The Plaintiff hereby incorporates by reference each and every preceding paragraphs 1 through 54 of this Amended Complaint as though fully plead and re-alleged in their entirety below.

55.   Defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCSHERRY& CAIN, with malice and knowing that probable cause did not exist to arrest Plaintiff and prosecute him for the possession of marihuana as alleged,  acting individually and in concert, caused  Plaintiff to be falsely arrested, charged, and prosecuted for those crimes, thereby violating  Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures and to be free of  prosecution absent probable cause.

56.     Specifically, these Defendants, acting individually and in concert, fabricated evidence, exculpatory facts that vitiated probable cause against  Plaintiff. These Defendants also deliberately failed to conduct a constitutionally  adequate investigation  in  light of evidence clearly establishing that the marihuana discovered on the third floor apartment during the unlawful search of Plaintiff's property did not belong to Plaintiff and therefore there was no evidence of constructive or actual possession of said marihuana by Plaintiff.

57.     These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights. No reasonable officer in would have believed this conduct was lawful.

58.     Plaintiff is completely innocent of possession of the alleged marihuana. After

many court appearances, on January 11, 2023, the D.A.'s office finally moved to dismiss all charges against Plaintiff, and as a result, all charges were dismissed and sealed.

59.     As a direct and proximate result of these Defendants' actions, Plaintiff spent suffered the grievous and continuing damages and injuries as set forth above.

**SECOND CAUSE OF ACTION FOR WRONGFUL ARREST
AND UNLAWFUL SEARCH AND SEIZURE AS AGAINST
DEFENDANTS CITY, PLIWIAK, ZERELLA, SANTANA,
TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN**

60.     The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 59, of this Amended Complaint as though fully plead and re-alleged in their entirety below, inclusive, as if here fully set forth at length.

61.     That the Fourth and fourteenth Amendments of the Constitution of the United States protects the right to be free from unreasonable searches and seizures; provides that warrants shall issue only upon probable cause, supported by oath or affirmation.

62.     That the above described conduct that took place on February 23, 2020 at the subject times and place by the Defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN constitutes an unreasonable and unlawful search of the premises.

63.     That at the time of Plaintiff's arrest, the defendants CITY, PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN justification or probable cause: (a) to believe that Plaintiff had committed any crime or (b) to believe that the Plaintiff was about to commit a crime.

64.     By their conduct, defendants CITY, PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT MCHSERRY & CAIN under color of law, deprived Plaintiff of his constitutional right to be free from unlawful arrest in the absence of probable cause to believe that Plaintiff had committed a crime.

65.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, defendant CITY employed the aforementioned defendants , PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN and JOHN DOES 1-5 as agents, servants and employees of each of defendants CITY, and who were at all times herein acting within the purpose and scope of such agency and employment and as such the CITY is vicariously liable for such officers, agents, servants and employees wrongful conduct thereto.

### AS A FOR A THIRD CAUSE OF ACTION FOR ABUSE OF PROCESS AGAINST DEFENDANTS CITY, PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT MCHSERRY & CAIN

66.     The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 66, of this Amended Complaint as though fully plead and re-alleged in their entirety below, inclusive, as if here fully set forth.

67.     Defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN deprived Plaintiff of any contact with legal counsel and unreasonably delayed his arraignment for more than 48 hours in an attempt to intimidate Plaintiff into refraining from exercising his constitutional rights.

### AS AND FOR A FOURTH CAUSE OF ACTION AS AGAINST DEFENDANTS CITY FOR MONELL VIOLATIONS OF PLAINTIFFS CIVIL RIGHTS UNDER 42 USC SECTION 1983

68.     The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 67 of this Amended Complaint as though fully plead and re-alleged in their entirety below, inclusive, as if here fully set forth.

69.     That the Fourth and fourteenth Amendments of the Constitution of the United States protects the right to be free from unreasonable searches and seizures and from unlawful arrest.

70.     Beginning on or about February 23, 2020, members of the Kings County DA's Office, violated Plaintiff's constitutional rights and his resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct chargeable to a de facto policy, custom or practice on the part of the Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, subject to prosecution by the Kings County DA's Office, namely:

71.     The City of New York, through its Kings County District Attorney's Office's institution and implementation of plainly inadequate or unlawful policies, procedures, regulations, practices, and customs concerning the duty not to initiate a criminal prosecution that is not based on probable cause; The CITY's deliberate indifference to the need (of which it has failed) to adequately instruct train, supervise, and discipline its employees with respect to such matters.

72.     The aforesaid deliberate or de facto policies, procedures, regulations, practices and customs, including the failure to properly instruct, train, supervise, and discipline employees with regard thereto, were implemented or tolerated by policymaking officials for Defendant City, and its delegates, who knew:

> To a moral certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

> That such issues present employees with difficult choices of the sort that instruction, training, supervision, and discipline will make correct choices less difficult and incentivize making correct choices;

That the making of wrong choices by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him or her constitutional injury; and that employees of the DA's Office had a long history of making wrong choices in such matters.

The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon numerous credible allegations, that the DA's Office ADAs had participated in the manufacturing of false testimony or evidence; presented or failed to correct false or misleading testimony and argument; failed to disclose information favorable to the defense that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York; and the inherent obviousness of the need to train, supervise, and discipline ADAs in their aforementioned constitutional obligations to counteract the inherent pressure on prosecutors to obtain convictions.

73.  At the time of Plaintiff's prosecution, the City of New York, through its Kings County District Attorney's Office indifference to the aforementioned types of prosecutorial misconduct was evidenced by his failure to conduct internal disciplinary investigations; discipline the prosecutors who were known to engage in such or refer such individuals for possible discipline by the Appellate Division's Disciplinary or Grievance Committees.

74.  Instead of disciplining such prosecutors for the aforementioned types of prosecutorial misconduct, the City of New York, through its Kings County District Attorney's Office, custom, or practice was to give them raises, promotions and commendations, based in part on their record of securing indictments, winning at trial and extracting guilty pleas, even in weak cases or cases where reasonable grounds did not exist to believe the defendant committed the offense charged.

75.   Thus, prosecutors were incentivized to violate the constitutional rights of criminal  defendants, since they knew they were likely to be rewarded for winning but would suffer no  negative consequences if it ever became known that they were violating the rights of the defendants  they were prosecuting.

76.   Further encouraging prosecutors to win at any cost was their knowledge that the  DA's Office had no employee handbook or other published procedure for disciplining prosecutors who violated rules of behavior for criminal prosecutions.

77.   Indeed, prosecutors were emboldened to violate basic constitutional provisions  protecting criminal defendants' constitutional right to a fair trial by their knowledge that the Kings County District Attorney's was willing to pursue or tolerate policies, customs, and practices that  brazenly violated criminal defendants' fundamental constitutional rights.

78.   The aforementioned policy making officials had the knowledge and the notice alleged in the preceding paragraphs. For example, the highly publicized decision of the Kings County District Attorney to dismiss 378 convictions after it was disclosed that his office had relied on testimony and criminal investigations involving thirteen (13) police officers who had committed serious crimes  while on duty, including planting drugs.(See Kings County District Attorney's Office press release dated Sept. 7, 2022.) This is the sixth largest mass dismissal of convictions in U.S. history, according to data collected by the National Registry of Exonerations.

79.   In another highly publicized decision, The Kings County District Attorney's office, in 2021, was forced to dismiss 27 felony convictions and 63 misdemeanor convictions when it was revealed that his ADA's had relied on the testimony of Det. Joseph Franco, who was arrested for perjury. Det. Franco was subsequently terminated from his position with the NYPD. (See Kings County District Attorney's Office press release dated April 7, 2021). In that press release District Attorney Gonzalez said, "*Knowingly and repeatedly framing innocent people obliterates the credibility of any police officer and proving perjury in such circumstances is rare.*

*After a grand jury reviewed the evidence and indicted former Detective Franco, I have lost confidence in his work. His cases in Brooklyn are over a decade old, which limited our ability to reinvestigate them, but I cannot in good faith stand by convictions that principally relied on his testimony. Integrity and credibility are at the heart of the justice system and prerequisites for community trust".*

80.   In the 1980's and 1990's the Kings County District Attorney's Office prosecuted dozens of cases while relying on the testimony of now retired Det. Louis Scarcella, who for years had been accused of falsifying evidence against defendants, repeatedly using the same confidential informant in many cases and coercing confessions from defendants.

81.   As reported in the press, (see New York Times article dated April 1, 2019, entitled: ***A Former Detective Accused of Framing 8 People for Murder is Confronted in Court*** written by Sean Piccoli). The article states in part: *In the 1980s and 1990s, Mr. Scarcella was a rock-star homicide detective in some of Brooklyn's most crime-ridden precincts. He cut a swaggering figure, with a taste for cigars and a reputation for persuading even the toughest suspects to confess. Then in 2013, one of Mr. Scarcella's most celebrated cases — the arrest of David Ranta, an unemployed drug addict convicted of killing a Hasidic rabbi — fell apart after evidence emerged that Mr. Ranta had been framed. The collapse of the case led to Mr. Ranta's release from prison after 23 years and to an inquiry into more than 70 homicides that Mr. Scarcella had helped to investigate over his long career.*

82.   In another New York Times article written by Stephanie Clifford dated Sept. 24, 2014 and entitled ***Scarcella Takes the Stand in Defense of his Actions in Disputed 91' Murder Case***, it is reported that defense counsel Mr. Sussman questioned Det. Scarcella regarding the use of the same confidential informant on numerous murder cases. *Mr. Sussman asked about Teresa Gomez, a crack addict who was a witness in six of Mr. Scarcella's cases. Some of the men identified by Ms. Gomez had their convictions cleared after the conviction review unit looked at the cases and determined she was not credible.*

83. Notwithstanding the constant allegations over many years against Det. Scarcella, the Kings County District Attorney's Office, for years turned a blind eye to the obvious constitutional violations perpetrated by Det. Scarcella and continued to present him as a credible witness for the sake of gaining convictions.  After retiring in 1999, Det. Scarcella appeared on the Television show Dr. Phil, during his appearance on the show, he stated that he'd done "*whatever I have to do within the law*" to get confessions or cooperation. "*The bad guys don't play by the rules when they kill Ma and Pop,*" he said. "*I don't play by the rules, but I play within the moral rules and the rules of the arrest in Brooklyn.*"

84. The City of New York, through its Kings County District Attorney's Office's policy, custom and practice of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of  his Office's constitutional obligations foreseeably encouraged such violations to continue and was  a substantial cause of the violations of Plaintiff's constitutional rights beginning with the  initiation of a criminal prosecution against him on February 23, 2020 without probable cause and continuing until January 11, 2023, when the DA's office moved to dismiss the false charges against Plaintiff.

85. The aforesaid policies, procedures, regulations, practices, and customs of Defendant City were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and Laws of the United States  and in causing his damages.

86. Under the principles of municipal liability for federal civil rights violations, the City of New York, through its Kings County District Attorney's Office (or his authorized delegates) has final managerial responsibility  for training, instructing, supervising, and disciplining attorneys and other employees in his office  regarding their conduct in the prosecution of criminal matters, including but not limited to, their  obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosure  of exculpatory

evidence to the defense, to refrain from offering false or misleading evidence, testimony mad argument during pretrial and trial proceedings, and to correct such false or misleading evidence, testimony, and argument when they become aware of it.

87.    The City of New York, through its Kings County District Attorney's Office, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to his Office's performance of its duties.

88.    The Kings County District Attorney, at all relevant times, was and is an elected officer of Kings County, one of the constituent counties of Defendant City; the Office was and is funded out of the City's budget; and the Office was and is a New York City agency.

89.    The Kings County District Attorney was and is designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2; New York has provided by statute (New York County Law §§ 53, 941) that Defendant City's constituent counties (including Kings County), and hence Defendant City has liability for torts committed by County officers and employees, such as the Kings County District Attorney and his assistants, and Defendant City represents such officers and employees in judicial proceedings and indemnifies them because they are City officials.

90.    The City of New York, through its Kings County District Attorney's Office personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

91.    During all times material to this Complaint, the City, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies,

procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

92. By virtue of the foregoing, Defendant City is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his resultant injuries.

### AS AND FOR A FIFTH CAUSE OF ACTION<br>AS AGAINST DEFENDANTS CITY and THE NEW YORK<br>CITY POLICE DEPARTMENT FOR MONELL<br>VIOLATIONS OF PLAINTIFFS CIVIL RIGHTS<br>UNDER 42 USC SECTION 1983

93. The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 92, of this Amended Complaint as though fully plead and re-alleged in their entirety below, inclusive, as if here fully set forth.

94. That the Fourth and fourteenth Amendments of the Constitution of the United States protects the right to be free from unreasonable searches and seizures and from unlawful arrest.

95. That it is well documented and acknowledged by City officials that there is "implicit bias" in the N.Y.P.D. (see New York Times article by Al Baker dated July 15, 2018 entitled *Confronting Implicit Bias in the New York Police Department*.)Implicit bias is defined as: *a form of bias that occurs automatically and unintentionally, that nevertheless affects judgments, decisions, and behaviors*. The article states in part: *While explicit bias remains part of the fabric of life in the United States, elected leaders and chiefs of police have increasingly focused on what is often called implicit bias, inherently unintentional yet more pervasive. In policing, the consequences of such bias can be dire. If officers rely on stereotypes instead of facts, routine encounters can escalate or turn deadly.* The article goes on to state: *But Patricia G. Devine, a professor of psychology at the University of Wisconsin who runs a research laboratory on prejudice, said she was troubled by the spread of such training in the absence of*

*probing, objective research. She said more study of officers' unintentional biases is necessary to evaluate how training can impact their behaviors. Additional data is needed, she said, to determine if officers retain what they are taught and if civilians are benefiting from fairer policing.*

96.     Plaintiff was clearly the victim of implicit bias when as stated above he was questioned by officers at the scene of his arrest as follows: "***why do people like you live in this place***", "***how did you buy this property***", "***how did you get all this nice stuff***"

97.     That the City failed to take the steps necessary to properly train, supervise or otherwise instruct its officers, including but not limited to defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN, in the proper grounds for making arrests in minority majority neighborhoods of New York City based on constructive possession of marihuana and other related contraband; the proper and strict adherence to their duties and obligations not file false criminal charges and thus abuse process to shield themselves from liability as against those individuals whom they have knowingly wronged,

98.     Defendant City and all their principals thereto knew or should have known to a moral certainty from multiple public sources, including but not limited, decades long mainstream media and alternative media news reports and articles on television both Nationally and locally, internet and social media, internal police investigations, racial advocacy group reports and other non-governmental organization reports, of the unequal, unconstitutional and racially discriminatory enforcement of constructive possession laws regarding possession of marihuana and other related contraband by minorities in minority majority neighborhoods of New York City and in particular, such enforcement activities by officers of the 75th Precinct, that defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN would confront situations where he would encounter marihuana and

other related contraband in separate or and distinct subunits of a multiple-dwelling premises owned by minority landlords but which subunits are clearly, physically and legally leased to such tenants such that dominion and control of such marihuana and other related contraband is upon cursory police investigation easily determined to be solely possessed by such tenants given their complete legal and physically factual leasehold control of such subunits but nonetheless because of systemic racism and a failure to properly train, supervise and, retain said police officer(s) against, among things, such reflexive systemic racism, he or she, and in this case defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN, would concoct and fabricate false charges and then cover up and conceal their wrongdoing by falsely arresting the innocent minority landlords.

99.     That the City of New York by and through its various law enforcement agencies, including but not limited to the District Attorney's offices throughout the City of New York, have promulgated policies, including but not limited to the Narcotics Eviction Program and or through established customary practice of disproportionate, disparate and unconstitutional enforcement of marihuana criminal laws by police officers in minority majority New York City neighborhoods, all of which impact and affect minorities in an unconstitutional and illegal manner inconsistent with their constitutional rights thereto.

100.    The City of New York, through Police Department promulgated its patrol guide, particularly including Procedure 208.01 which requires that a police officer have reasonable cause to believe that a crime has been committed by the person arrested before taking that person into custody, but that policy has been systematically ignored by the officers assigned to the 75th Precinct, particularly in cases involving marihuana and other related contraband, and minorities.

101.    Officers assigned to the 75th Precinct have acquired a well-deserved reputation of ignoring the Patrol Guide and making unfounded marihuana (and unrelated contraband) arrests in order to intimidate members of non-white minority races into fearing the NYPD.

102.    Defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN's arrest of Plaintiff and Plaintiff's subsequent unlawful detention, both *ab initio* and by reason of its unnecessary prolongation, represent an instance of the aforesaid policy and established custom adopted by the 75th Precinct with the connivance and toleration of the City and NYPD.

103.    Plaintiff is a member of a minority group, being a dark-skinned person of Muslim, South Asian Bangaldeshi ancestry.

104.    The City and its relevant principals, as the final decision maker, and as a matter of practice and policy thereto exercised deliberate indifference as to Plaintiff's constitutional rights by failing to take remedial actions such as providing adequate training, supervision, retraining and disciplining of such NYPD Officers on the requirements of probable cause before making arrests, the wrongfulness of abuse of process, and the necessity to avoid failures to intervene by NYPD Officers where individuals being subjected to wrongful conduct by other NYPD Officers is occurring in their presence.

105.    That the conduct of the defendants CITY and defendants PLIAWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN violated Plaintiff's rights under 42 USC Section 1983, the Fourth and Fourteenth Amendment, the Constitution of the United States and the laws of New York State by failing to properly train, supervise and retrain officers of the NYPD in among other things, making arrests involving charges of constructive possession of marijuana and other related contraband in minority majority New York City Neighborhoods, especially Police Officers those assigned to the 75th Precinct, failing to adequately discipline the subordinate agents of the 75th Precinct, failing to adequately investigate prior complaints against the defendant subordinate agents and employees, and by acting in a manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees in violation of state and federal law.

106.    That the aforementioned individual  subject NYPD defendants' actions  were committed under color of state law and that these acts deprived the plaintiff  of rights, privileges, or immunities secured by the Constitution or laws of the United States.

107.    As a direct and proximate result of the misconduct and abuse detailed above, Plaintiff experienced deprivation of his right to liberty, loss of his job and his ability to pursue his vocation, personal injuries, conscious pain, emotional distress, mental anguish, embarrassment, and humiliation.

108.    That solely by reason of the above, the Plaintiff has been damaged in an amount in excess of  the jurisdictional limits of any lower court in which this action could be maintained.

107.    That the City failed to take the steps necessary to properly train, supervise or otherwise instruct its officers, including but not limited to, PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY & CAIN, in the proper grounds for making arrests in minority neighborhoods of New York City based on constructive possession of marihuana and other related contraband; the proper and strict adherence to their duties and obligations to not file false criminal charges and thus abuse process to shield themselves from liability as against those individuals whom they have knowingly wronged.

108.    Defendant CITY and all their principals thereto knew or should have known to a moral certainty from multiple public sources, including but not limited, decades long mainstream media and alternative media news reports and articles on television both nationally and locally, internet and social media, internal police investigations, racial advocacy group reports and other non-governmental organization reports, of the unequal, unconstitutional and racially discriminatory enforcement of constructive possession laws regarding possession of marihuana and other related contraband by minorities in minority neighborhoods of New York City and in particular, such enforcement activities by officers of the 75th Precinct, that defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT MCHSERRY CAIN

and JOHN DOES 1-5 would confront situations where they would encounter marihuana and other related contraband in separate or and distinct subunits of a multiple-dwelling premises owned by minority landlords but which subunits are clearly, physically and legally leased to such tenants such that dominion and control of such marihuana and other related contraband is upon cursory police investigation easily determined to be solely possessed by such tenants given their complete legal and physically factual leasehold control of such subunits but nonetheless because of systemic racism and a failure to properly train, supervise and, retain said police officer(s) against, among things, such reflexive systemic racism, he or she, and in this case, defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY and CAIN would concoct and fabricate false charges and then cover up and conceal their wrongdoing by falsely arresting the innocent minority landlords.

109.    That the City of New York by and through its various law enforcement agencies, including but not limited to the District Attorney's offices throughout the City of New York, have promulgated policies, including but not limited to the Narcotics Eviction Program and or through established customary practice of disproportionate, disparate and unconstitutional enforcement of marihuana criminal laws by police officers in minority majority New York City neighborhoods, all of which impact and affect minorities in an unconstitutional and illegal manner inconsistent with their constitutional rights thereto.

110.    The City of New York, through the NYPD promulgated its patrol guide, particularly including Procedure 208.01 which requires that a police officer have reasonable cause to believe that a crime has been committed by the person arrested before taking that person into custody, but that policy has been systematically ignored by the officers assigned to the 75th Precinct, particularly in cases involving marihuana and other related contraband, and minorities.

111.   Officers assigned to the 75th Precinct have acquired a well-deserved reputation of ignoring the Patrol Guide and making unfounded marihuana (and unrelated contraband) arrests in order to intimidate members of non-white minority races into fearing the NYPD.

112.   Defendants LIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT MCHSERRY and CAIN's arrest of Plaintiff and Plaintiff's subsequent unlawful detention, both *ab initio* and by reason of its unnecessary prolongation, represent an instance of the aforesaid policy and established custom adopted by the 75th Precinct with the connivance and toleration of the City and NYPD.

113.   Plaintiff is a member of a minority group, being a dark-skinned person of Muslim, South Asian Bangaldeshi ancestry.

114.   The City and the NYPD and its relevant principals, as the final decision maker, and as a matter of practice and policy thereto exercised deliberate indifference as to Plaintiff's constitutional rights by failing to take remedial actions such as providing adequate training, supervision, retraining and disciplining of such NYPD Officers on the requirements of probable cause before making arrests, the wrongfulness of abuse of process, and the necessity to avoid failures to intervene by NYPD Officers where individuals being subjected to wrongful conduct by other NYPD Officers is occurring in their presence.

115.   That the conduct of the defendants , CITY, violated Plaintiff's rights under 42 USC Section 1983, the Fourth and Fourteenth Amendment, the Constitution of the United States and the laws of New York State by failing to properly train, supervise and retrain officers of the NYPD including, PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN in among other things, making arrests involving charges of constructive possession of marijuana and other related contraband in minority majority New York City Neighborhoods, especially Police Officers those assigned to the 75th Precinct, failing to adequately discipline the subordinate agents of the 75th Precinct, failing to adequately investigate

prior complaints against the defendant subordinate agents and employees, and by acting in a manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees in violation of state and federal law.

116.    That the aforementioned individual subject NYPD defendants' actions  were committed under color of state law and that these acts deprived the plaintiff  of rights, privileges, or immunities secured by the Constitution or laws of the United States.

117.    As a direct and proximate result of the misconduct and abuse detailed above, Plaintiff experienced deprivation of his right to liberty, loss of his job and his ability to pursue his vocation, personal injuries, conscious pain, emotional distress, mental anguish, embarrassment, and humiliation.

118.    That solely by reason of the above, the Plaintiff has been damaged in an amount in excess of  the jurisdictional limits of any lower court in which this action could be maintained.


**AS AND FOR A SEVENTH CAUSE OF ACTION
FOR FAILURE TO INTERVENE  UNDER 42 USC § 1983 AS AGAINST
DEFENDANTS PLIWIAK, ZERELLA, SANTANA,
TASEVOLI, MASTORARDI, CALHOUN, ELLIOT, MCSHERRY & CAIN**


119.    The **PLAINTIFF** hereby incorporates by reference each and every preceding paragraph 1-118 of this Amended Complaint as though fully pleaded and re-alleged in their entirety below.

120.    That the Fourth Amendment and fourteenth of the Constitution of the United States protects the right to be free from unreasonable searches and seizures; provides that warrants shall issue only upon probable cause, supported by oath or affirmation.

121.    That the named individual NYPD defendants, including but not limited PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN

had an affirmative duty to intervene on behalf of PLAINTIFF, whose constitutional rights were being violated in their presence and in the presence of other officers.

122.    By their conduct and under color of state law, said Defendants had opportunities to intervene on behalf of Plaintiff to prevent his false arrest, malicious prosecution, false imprisonment, and his deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

123.    These Defendants' failures to intercede violated Plaintiff's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable police officer would have believed that failing to intervene to prevent these Defendants from fabricating inculpatory evidence, intentionally using coercion to attempt to obtain inculpatory statements, deliberately failing to conduct a constitutionally adequate investigation, and causing Plaintiff to be arrested and prosecuted without probable cause, were lawful.

124. As a direct and proximate result of these Defendants' actions, Plaintiff was wrongfully arrested and detained and suffered the other grievous and continuing damages and injuries set forth above.

125.    That said named individual NYPD defendants failed to intervene to prevent the unlawful conduct described herein.

126.    That the aforementioned individual NYPD defendants' actions were committed under color of state law and that these acts "deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."

127.    That the subject individual NYPD defendants including PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN who were present while

Plaintiff was wrongfully arrested by fellow NYPD officers and failed to intervene to prevent

other law enforcement officers from infringing the constitutional rights of citizens are liable

under § 1983 as those  officer had reason to know: that the search of the third floor apartment

was unsupported by a warrant or reasonable suspicion, that the contents of the third floor

apartment were not actually or constructively possessed by Plaintiff, whose protests that he was

the landlord, not occupant, required Defendants PLIWIAK, ZERELLA, SANTANA,

TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN and John Does #1-5 to take reasonable

steps to establish any basis for claiming that the contraband seized from the third floor apartment

was constructively or actually possessed by Plaintiff, that the claim of possession, actual or

constructive, was a pretext adopted by said Defendants PLIWIAK, ZERELLA, SANTANA,

TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN and  John  Does # 1-5 to cover up and

conceal their wrongdoing, and as part of a common scheme to intimidate residents of East New

York from exercising their right to be secure in their persons and effects.

     128.    That as a result of the foregoing, Plaintiff's was unwarrantedly arrested,  suffered

abuse of process, false arrest and false imprisonment on a false charge and he was put in fear of

his safety, and he was humiliated and subject to other physical constraints and injuries.

     129.    By the reason of the foregoing, PLAINTIFF, was severely injured and damaged,

rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish,

great physical pain and emotional upset, suffered the loss of his employment and has been put at

risk of being disqualified from pursuing his vocation, some of which injuries are permanent in

nature and duration, and PLAINTIFF will be permanently caused to suffer pain and

inconvenience and other effects of such injuries; and PLAINTIFF has incurred and in the future

will necessarily incur further legal expense, loss of income, hospital and/or medical expenses in

an effort to be cured of such said injuries; and PLAINTIFF has suffered and in the future will

necessarily suffer additional loss of time from his usual pursuits, duties and activities; and

PLAINTIFF will be unable to pursue Plaintiff's usual duties with the same degree of efficiency as prior to this occurrence all to Plaintiff's great damage.

130.    That solely by reason of the above, the Plaintiff has been damaged in an amount in excess of the jurisdictional limits of any lower court in which this action might be maintained.

## AS AND FOR A NINTH  CAUSE OF ACTION FOR A
## PENDENT STATE CLAIM
## FOR MALICIOUS PROSECUTION
## AS AGAINST ALL DEFENDANTS

131.    The Plaintiff, hereby incorporates by reference each and every preceding paragraph, numbered 1 through 130, of this Amended Complaint as though fully plead and re-alleged in their entirety below.

132.    That all relevant times set forth herein Defendants CITY, including PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN and Police Officers JOHN DOES# 1-5 as their agents, servants and or employees did commence a criminal proceeding against the Plaintiff, that the same prosecution terminated in Plaintiff's favor, and that there was an absence of a reasonable finding of probable cause to initiate such same criminal proceeding against the Plaintiff.

133.    At all relevant times hereto, Plaintiff is informed and believes and thereon alleges that defendant CITY employed the aforementioned defendant officers and supervisors as agents, servants and employees who were was at all times herein acting within the purpose and scope of such agency and employment and as such the CITY is vicariously liable for such officers, agents, servants and employees wrongful conduct thereto.

134.    That by reason of the aforesaid unlawful and malicious prosecution and criminal charges and hearings, the Plaintiff was deprived of his liberty, was subjected to great indignity, pain, humiliation, and great distress of mind and body and was held up to scorn and ridicule, was injured in character and reputation, was prevented from attending his usual business and avocation, was injured in his reputation in the community and the said Plaintiff has been otherwise damaged.

135.    That by reason of the aforesaid, the Plaintiff was injured in Mind and Body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

136.    Plaintiff has been damaged as a result of said defendants actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

**AS AND FOR A TENTH CAUSE OF ACTION FOR PENDENT STATE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ON AS AGAINST ALL DEFENDANTS**

137.    The Plaintiff hereby incorporates by reference each and every preceding paragraphs 1 through 142, of this Amended Complaint as though fully plead and re-alleged in their entirety below.

147.    Plaintiff is informed and believes and thereon alleges, that such acts of Defendants  CITY, , including Defendant(s) PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY & CAIN and Police Officers JOHN DOES# 1-5 as their agents, servants and or employees were intentional, extreme, and outrageous. Plaintiff  is further informed and believes and thereon alleges that such actions were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing Plaintiff serious emotional distress.

148.    At all relevant times hereto, Plaintiff is informed and believes and thereon alleges that defendants CITY employed the aforementioned defendant officers as agents, servants and employees of defendant CITY, who were at all times herein acting within the purpose and scope of such agency and employment and as such the CITY is vicariously liable for such officers, agents, servants and employees wrongful conduct thereto.

149.    That as a direct, legal and proximate result of such acts of the Defendants  and each of them, including Defendant(s) PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY & CAIN and Police Officers JOHN DOES# 1-5 as their agents, servants and or employees Plaintiff, sustained injuries to various parts of his head, body, limbs and nervous system and, upon information and belief, some of his injuries are of a permanent and/or protracted nature; that by reason thereof, he was confined to hospital, bed and home and prevented from attending to his usual business and/or occupation, and sustained a loss of earnings and he was required and will be required to obtain medical aid and attention in an effort to cure and alleviate his injuries.

**AS AND FOR A ELEVENTH CAUSE OF ACTION FOR A PENDENT STATE CLAIM FOR  FAILURE TO INTERVENE AS AGAINST DEFENDANTS PLIWIAK, ZERELLA, SANTANA, TASEVOLI, MASTORARDI, CALHOUN, ELLIOT, MCSHERRY & CAIN**

150.    The Plaintiff, hereby incorporates by reference each and every preceding paragraph 1 through 149 of this Complaint as though fully plead and re-alleged in their entirety below.

151.    That the Defendant individual Officers, including but not limited to PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN and Police

Officers JOHN DOES# 1-6  had an affirmative duty to intervene on behalf of PLAINTIFF, whose constitutional rights were being violated in their presence by other police officers.

152.    That said Defendants failed to intervene to prevent the unlawful conduct described herein.

153.    That at all relevant time hereto, Plaintiff is informed and believes and thereon alleges that defendant CITY employed the aforementioned defendant officers as agents, servants and employees of each of defendant CITY who were was at all times herein acting within the purpose and scope of such agency and employment and as such the CITY is vicariously liable for such officers, agents, servants and employees wrongful conduct thereto.

154.    That as a result of the foregoing, Plaintiff's was unwarrantedly suffered abuse of process, false arrest and false imprisonment on a false charge and malicious prosecution, among others,  and he was put in fear of his safety, and he was humiliated and subject to other physical constraints and injuries.

155.    By the reason of the foregoing, Plaintiff, was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and  Plaintiff has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and  Plaintiff will be unable to pursue Plaintiff's usual duties with the same degree of efficiency as prior to this occurrence all to Plaintiff's great damage.

156.    Plaintiff has been damaged as a result of said defendants actions in an amount believed to equal or exceed the jurisdictional limit of this Court.


### AS AND FOR A TWELFTH  CAUSE OF ACTION
### FOR PENDENT STATE CLAIM FOR  NEGLIGENCE IN HIRING AND RETAINING
### AS AGAINST DEFENDANT CITY

157.    The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 156, of this Amended Complaint as though fully plead and re-alleged in their entirety below.

158.    That the NYPD and D.A.'s Office Defendants Police Offices  PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 lacked the experience, deportment and ability to be employed by Defendants CITY, in that Defendant CITY  failed to exercise due care and caution in its hiring

practices, and in particular, in hiring the defendant employees, including but not limited to Defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 and who lacked the mental capacity and the ability to function as employees of Defendants CITY; in that the defendant police officers, lacked the maturity, sensibility and intelligence to be employed by Defendant CITY, in that Defendants CITY knew of the lack of ability, experience, deportment and maturity of said defendant employees when they hired them to be employees as police officers; and, in that Defendants CITY , its agents, servants and/or employees were otherwise careless, negligent and reckless by hiring the individually named Defendants.

159.    Defendant CITY knew, or should have known in the exercise of reasonable care, the propensities of the subject individually named Defendants to engage in the wrongful conduct heretofore alleged in this Complaint.

160.    That Defendant CITY  its agents, servants and employees in its failure to exercise reasonable care to hire and retain, did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, Plaintiff.

161.    That the Defendant CITY**,** was careless and reckless in hiring and retaining its employees, to wit  defendants PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 in that said Defendants lacked the experience deportment and ability to be employed by the defendant CITY.

162.    That Defendant CITY  failed to exercise due care and caution in its hiring and retaining practices, and in particular, in hiring and retaining the Defendant police officers who lacked the mental capacity and the ability to function as employees of the aforementioned Defendant; and in that the CITY hired and retained as an employee of their police department and Kings County District Attorney's Office individuals whose backgrounds contained information (based upon information and belief) that revealed said Defendant employees lacked the maturity, sensibility, and intelligence to be employed by the Defendant CITY; in that the Defendant CITY knew of the lack of ability, experience, deportment and maturity of said Defendant employees when they hired them to be employees; and, in that the Defendant CITY their agents, servants and employees were otherwise careless, negligent, and reckless.

163.    That the aforesaid occurrence, to wit, the improper and unreasonable hiring and retaining of  Police Officer employees resulted in,  false arrest and imprisonment and other wrongs, resulting injuries to Plaintiff's mind and body therefrom were caused wholly and solely by reason

of the negligence in the hiring and retention of the Defendants, its agents, servants and employees without any negligence on the part of Plaintiff.

164.    That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

165.    Plaintiff has been damaged as a result of said defendants actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

### AS AND FOR  A THIRTEENTH CAUSE OF ACTION
### FOR PENDENT STATE CLAIM FOR NEGLIGENCE IN TRAINING AND
### SUPERVISING AGAINST DEFENDANT CITY

166.    The Plaintiff, hereby incorporates by reference each and every preceding paragraphs 1 through 165, of this Amended Complaint as though fully plead and re-alleged in their entirety below.

167.    That the Defendants Police Offices  PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 being employees of the Defendant CITY, were negligently trained and supervised in the performance of their duties in that Defendant CITY  failed to exercise due care and caution in its training and supervising practices that would have prevented the subject Officers involved in the subject arrest herein from falsely arresting and imprisoning Plaintiff, from maliciously prosecuting him and or detaining Plaintiff and filing false charges against him, among other wrongs.

168.    Defendant CITY knew or should have known in the exercise of reasonable care, that the training and supervision of such Defendants to wit, Police Offices  PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 as inadequate and insufficient to prevent the same from engaging in the wrongful conduct heretofore alleged in this Amended Complaint.

169.    That Defendant CITY, its agents, servants and employees in their failure to exercise reasonable care to train and supervise, did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

170.    That the Defendant CITY was careless and reckless in its training and supervising of its employees, to wit, Police Offices  PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY, CAIN Police Officers JOHN DOES# 1-6 in that said Defendant knew and or should have known that falsely arresting,  filing false charges,

maliciously prosecuting Plaintiff abusing process and other wrongful conduct described above was unlawful and wrong and should not have engaged in such wrongful and or unlawful conduct.

171.    That Defendant CITY failed to exercise due care and caution in its training and supervising practices, and in particular, in hiring and retaining the Defendant employees who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; and in that it hired and retained as its employees, individuals whose backgrounds contained information (based upon information and belief) that revealed said Defendants lacked the maturity, sensibility, and intelligence to be employed by the Defendants CITY; in that the Defendants CITY  knew of the lack of ability, experience, deportment and maturity of said Defendant employees when they hired them to be employee; and, in that the Defendants CITY, their agents, servants and employees were otherwise careless, negligent, and reckless.

172.    That the aforesaid occurrence, to wit, the improper and unreasonable training and supervising employees resulted in the false arrest and imprisonment, abuse of process, malicious prosecution, failure to intervene, among other wrongs, and resulting injuries to Plaintiff's  mind and body therefrom were caused wholly and solely by reason of the negligence of the Defendant CITY, its agents, servants and employees without any negligence on the part of Plaintiff.

173.    That by reason of the aforesaid, Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

174.    Plaintiff has been damaged as a result of said defendants actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## FOR PENDENT STATE CLAIM FOR  ABUSE OF PROCESS
## AS AGAINST ALL DEFENDANTS

175.    The Plaintiff hereby incorporates by reference each and every preceding paragraphs 1 through 174 of this Amended Complaint as though fully plead and re-alleged in their entirety below.

176.    That the above described actions of the Defendants  CITY and more specifically, their agents, servants and employees, to wit Police Offices  PLIWIAK, ZERELLA, SANTANA, TASEVOLI, CALHOUN, ELLIOT, MCHSERRY & CAIN, Police Officers JOHN DOES# 1-6 constitutes abuse of process in that these defendants intentionally, willfully, and maliciously fabricated criminal charges  as against Plaintiff  with the intent to cover up the above described false arrest and imprisonment and the defendants knowingly and intentionally abused the process

of prosecution in this perverted manner to shield themselves from potential legal action to be taken against them by their employers, to wit Defendant CITY.

177.    At all relevant time hereto, Plaintiff is informed and believes and thereon alleges that the defendant CITY, employed the aforementioned individually named defendants as agents, servants and employees of each of defendant CITY who were at all times herein acting within the purpose and scope of such agency and employment and as such the CITY is vicariously liable for such officers, agents, servants and employees' wrongful conduct thereto.

178.    By reason of the foregoing, Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish, and emotional upset, some of which injuries are permanent in nature and duration, and will be permanently caused to suffer pain and inconvenience and other effects of such injuries and has suffered and in the future will necessarily suffer additional loss of income, time from his usual pursuits, duties and activities; and will be unable to pursue his usual employment and   duties with the same degree of efficiency as prior to this occurrence all to his great damage.

179.    Plaintiff has been damaged as a result of said defendants actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

**WHEREFORE**, Plaintiff, SHAIFUL CHOWDHURY, prays as follows:

    a. That the Court award compensatory damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;

    b. That the Court award punitive damages to him against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

    c. For a trial by jury;

    d. For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

    e. For any and all other relief to which he may be entitled.

Dated: New York, NY
      March 24, 2023

Yours, etc.

_____ /S/

Rehan Nazrali, Esq.

Attorneys for Plaintiff
299 Broadway
Suite 1700
New York, NY 10007
(646)331-9378